Property Taxes — Overpayment — Refund 1. Attorney General Opinion No. 66-123, which held that 68 O.S. 24341 [68-24341] (1968) superseded or repealed by implication 62 O.S. 436a [62-436a], 62 O.S. 436b [62-436b], and 62 O.S. 436c [62-436c] [62-436c], is reaffirmed. 2. An Attorney General Opinion addressed to the State Examiner and Inspector, dated July 1, 1954, which held that the County Penalty Reserve Fund was abolished, is reaffirmed. 3. All real property tax refunds or rebates shall be paid from the Resale-Property Fund, and the only limitation thereon is the nonpayment of a claim for such refund or rebate within three (3) years, as provided in 68 O.S. 24341 [68-24341](c) (1968). 4. Attorney General Opinion No. 69-125 is superseded by this opinion. The Attorney General has had under consideration your request for an opinion, wherein you point out a conflict between Attorney General Opinion No. 69-125 and an Attorney General Opinion addressed to the Honorable Scott Burson, State Examiner and Inspector, dated July 1, 1954, and Attorney General Opinion No. 66-123. Attorney General Opinion No. 69-125 held that O.S.L. 1968, ch. 180, Section 1 (68 O.S. 2479 [68-2479] (1968)) did not act as a bar for recovery of an overpayment for real property taxes by a taxpayer who had made an overpayment or duplicate payment, but that the one year limitation therein merely determined if the refund was made from the County Penalty Reserve Fund or the Resale Property Fund. The Attorney General Opinion addressed to The Honorable Scott Burson, State Examiner and Inspector, dated July 1, 1954, held that O.S.L. 1953, p. 285, Section I (62 O.S. 1961 Sections 436a[62-436a] [62-436a], 436b, and 436c) abolished the County Penalty Reserve Fund, as of September 5, 1953, and that any balance in said fund became a part of the Resale Property Fund of the county as of that date. Attorney General Opinion No. 66-123 held that O.S.L. 1965, ch. 501, Section 2 (68 O.S. 4341 [68-4341] (1968)) repealed by implication 62 O.S. 1961 Sections 436a[62-436a] [62-436a], 436b, and 436c, and it further held that all penalties, interest and forfeitures which may accrue on delinquent ad valorem taxes go to the Resale Property Fund created by 68 O.S. 24341 [68-24341] (1968). You then ask the following questions: "1. Does the Attorney General adhere to the conclusion reached in Opinion No. 66-123, under date of May 13, 1966, addressed to the Examiner and Inspector, insofar as the same holds that 68 O.S. 4341 [68-4341] (1968), has the effect of superseding or repealing by implication 62 O.S. 436a [62-436a], 62 O.S. 436b [62-436b] and 62 O.S. 436c? 2. Is the penalty reserve fund still in existence? "3. If you determine our question No. 2 in the affirmative, what revenues received by the County Treasurer should be deposited in said fund?" The Attorney General reaffirms the Attorney General Opinion addressed to The Honorable Scott Burson, State Examiner and inspector, dated July 1, 1954, and Attorney General Opinion No. 66-123. It is therefore the opinion of the Attorney General that your first question be answered in the affirmative, in that the Attorney General reaffirms the conclusion reached in Opinion No. 66-123, which held that 68 O.S. 24341 [68-24341] (1968) superseded or repealed by implication 62 O.S. 1961 Sections 436a[62-436a] [62-436a], 436b, and 436c. It is the further opinion of the Attorney General that your second question be answered in the negative, in that the County Penalty Reserve Fund is no longer in existence. The answer to the second question being in the negative, your third question is moot. However, the answers to the first two questions do raise a question as to the conclusion in Attorney General Opinion No. 69-125. O.S.L. 1968, ch. 180, Section 1 (68 O.S. 2479 [68-2479] (1968)), provides in part as follows: "After delivery of the Tax Rolls to the County Treasurer of any county, no correction or alteration as to any item contained therein as of such date of delivery shall ever be made, except by the County Treasurer and on authority of a proper certificate authorized by law or pursuant to order or decree of court in determination of a tax protest or other proper case. "A board of Tax-roll Corrections, hereby created, consisting of the chairman of the Board of County Commissioners as chairman, the chairman of the County Equalization Board as vice-chairman, the County Clerk as nonvoting member and secretary, and the County Assessor, a majority of whom shall constitute a quorum, is hereby authorized to hear and determine allegations of error, mistake or difference as to any item or items so contained in said Tax Rolls, in any instances hereinafter enumerated, on application of any person or persons whose interest may in any manner be affected thereby, or by his agent or attorney, verified by affidavit and showing that the complainant was not at fault through his own failure to fulfill any duty enjoined upon him by law, or upon discovery by the County Treasurer or Assessor before the tax has been paid or attempted to be paid and disclosure by statement of fact in writing signed by said Treasurer or Assessor and verified by the Assessor or Treasurer as the case may be; but such right shall not be available to any one desirous of acquiring, or who has acquired, the lien of the county for such tax, whether by purchase, assignment, deed, or otherwise. "If, upon such hearing, it appears that: "(4) The same property, whether or personal, has been assessed more than once for the taxes of the same year. . . . "Then, in either or any such event, it shall be the duty of the Board of Tax-roll Corrections to make and the Secretary to enter its findings of fact and to correct such error, if such exists, by issuing its correction, whereupon the County Clerk shall issue a certificate of error to the County Treasurer if the tax be not paid, stating the amount or other effect of such order, and it shall be the duty of such County Treasurer to make and enter such correction upon his tax rolls and, if there be a correction to the amount of tax charged, to enter a credit, in lieu of cash, for the amount shown in such certificate. "If, prior to such hearing by the Board, as aforesaid, the tax has been paid, no certificate shall issue; but if less than one (I) year shall have elapsed after the payment of the tax and before the filing of such application for correction of error, and after such hearing the findings of fact disclosed that less tax was due to have been paid than was paid, then the person who paid the tax, or his heirs, successors, or assigns, may execute a cash voucher claim setting forth facts and findings, verify it, and file it with the County Clerk, who shall thereupon issue his cash voucher against the County Penalty Reserve Fund of the county, directing the County Treasurer to pay to such person the amount so found to be erroneous. The word 'person' as last hereinbefore applied shall comprehend the person, firm, or corporation who paid such tax and the heirs, assigns or successors, as the case may be. No such claim for refund shall be allowed and paid unless the same be filed within six (6) months after the effective date of the order of correction. "If there be any error in the taxes collected from any person, the overpayment or duplicate payment of any such taxes collected in error may be recovered by the taxpayer, and the County Treasurer is hereby authorized to make such payment from the Resale Property Fund of the county." O.S.L. 1965, ch. 501, Section 1 (68 O.S. 4341 [68-4341] (1968)) states in pertinent part: "(b) The Resale-Property Fund herein created for each county is hereby declared to be a continuous fund, not subject to fiscal year limitations, and is hereby dedicated, insofar as may be necessary, to the enforcement of the tax laws of the State, and is authorized to be expended for the following purposes: "(4) For all rebates allowed under authority of statute by the Board of County Commissioners or the Tax Roll Correction Board of the county upon taxes found to have been illegally or erroneously collected. . . . "(c) The expenditures so made shall be made only upon sworn itemized claims approved by the County Treasurer and filed with the County Clerk and paid by cash voucher drawn by the County Clerk payable from said Fund. . . . If any such claim has not been paid within three (3) years, the same shall cease to be an obligation of the Resale-Property Fund of such county . . . ." As stated in the next to the last paragraph of 68 O.S. 2479 [68-2479] (1968), supra, the limitations and procedures therein apply to the County Penalty Reserve Fund. Since the County Penalty Reserve Fund is no longer in existence, those limitations and procedures are of no effect, and all real property tax refunds certified by the Board of Tax Roll Corrections must be paid from the Resale-Property Fund in accordance with the last paragraph of 68 O.S. 2479 [68-2479] (1968), supra, and 68 O.S. 24341 [68-24341] (1968), supra. It is therefore the opinion of the Attorney General that all real property tax refunds or rebates shall be paid from the Resale-Property Fund, and the only limitation thereon is the nonpayment of a claim for such refund or rebate within three (3) years, as provided in 68 O.S. 24341 [68-24341](c) (1968). Attorney General Opinion No. 69-125 is superseded by this opinion. (Robert D. McDonald) (ED. NOTE: There was no published Opinion No. 69-125 (?) ** SEE: OPINION NO. 72-119 (1972) ** ** SEE: OPINION NO. 73-142 (1973) **